

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

RONALD MITCHELL GJEMRE,
**Plaintiff,**

-vs-                                                    **Case No.  A-13-CA-729-SS**

SHELLY LEE LEFFINGWELL, MICHAEL
MARTINEZ, KATHRYNE TOVO, LAURA
MORRISON, SHERYL COLE, WILLIAM
SPELMAN, CHRISTOPHER RILEY, MARC
OTT, and KAREN KENNARD, all in their official
and individual capacities, and THE CITY OF
AUSTIN,
**Defendants.**

# O R D E R

BE IT REMEMBERED on this day the Court reviewed the file in the above-styled cause, and specifically Defendants' Motion for Summary Judgment and Motion to Dismiss under Rule 12(b)(6) [#36], to which Plaintiff Ronald Mitchell Gjemre has not responded.  Having reviewed the documents, the relevant law, and the file as a whole, the Court now enters the following opinion and orders.

## Background

Plaintiff Ronald Gjemre brings this lawsuit against Austin Mayor Lee Leffingwell, individual City Council Members, City Manager Marc Ott, City Attorney Karen Kennard, and the City of Austin based on the alleged deprivation of his First Amendment rights.  The events at issue occurred at the August 18 and August 25, 2011 meetings of the Austin City Council.  Gjemre describes himself as "a life-long political activist who has participated in local government by delivering

testimony at Austin City Council meetings, Capital Area Metropolitan Planning Organization meetings and Travis County Commissioner Court meetings for many years." Compl. [#3] ¶¶ 13–14.

On August 18, 2011, Gjemre alleges he attempted to sign up for various agenda items on which to address the City Council, but he was told by Mayor Leffingwell's Chief of Staff, Nancy Williams, he would only be allowed to address three agenda items of his choice. *Id.* ¶¶ 19–20. Gjemre further contends the City Council considered 115 Agenda Items that day, and he addressed three of them while being denied the right to speak on several other Agenda Items. *Id.* ¶¶ 21–22.

The central events of this case, however, occurred on August 25, 2011, when Gjemre twice addressed the Council, once during "Approval of the Minutes" of a prior meeting and once during "Citizen Communications." During his first appearance, Gjemre came to the podium immediately upset about the way Mayor Leffingwell had pronounced his name in introducing him. *See* Mot. Summ. J. & Mot. Dismiss [#36] Ex. P1 (Approval of the Minutes Video). Gjemre accused Mayor Leffingwell of having "gone back on your understanding of how I choose to pronounce my name." *Id.* Offended at this perceived affront, Gjemre countered: "I guess I can call you Mayor Poo Poo Head now." *Id.* Mayor Leffingwell responded that he had pronounced Gjemre's name as written, and he cautioned Gjemre to be respectful. *Id.* He further instructed Gjemre to maintain good decorum, not make vulgar noises, and not make vulgar, obscene comments. *Id.*

Gjemre proceeded to introduce himself in what he calls his "characteristic fashion": by saying his first name "Ronnie," then taking a pronounced inhale, and finally exhaling while saying the name "Reeferseed." *Id.* To clarify, Gjemre acknowledges his last name is spelled G-J-E-M-R-E, but he "chooses to pronounce it" as "Reeferseed." Gjemre Depo. at 69:5–8. Gjemre's name pronunciation choice is meant to promote one of his political causes: marijuana decriminalization. *Id.* at 30:6–15,

31:8–32:8.   Gjemre also made what Defendants refer to as a "raspberry noise," which is accomplished by sticking one's tongue between pursed lips and blowing.  *See* Approval of the Minutes Video.  Gjemre was upset with Mayor Leffingwell for not introducing him as "Ronnie Reeferseed" and voiced his displeasure.  *Id.*  He then said his name again in his "characteristic fashion" and again made raspberry noises, this time while sticking his thumbs to his ears and waggling his fingers.  *Id.*  At this point, Mayor Leffingwell interrupted: "Mr. Reeferseed, step back." *Id.*  Mayor Leffingwell informed Gjemre his time was up, and so concluded Gjemre's first appearance of the day.  *Id.*

Next, during the "Citizen Communications" portion of the meeting, Mayor Leffingwell re-introduced Gjemre to the podium—this time as "Ronnie Reeferseed."  *See* Mot. Summ. J. & Mot. Dismiss [#36] Ex. P2 (Citizen Communications Video).    Mayor Leffingwell also renewed his warning to Gjemre regarding proper decorum and stated it would be the last one.  *Id.*  Gjemre once again introduced himself in his "characteristic fashion," and at that point, Mayor Leffingwell decided to end Gjemre's time at the podium.  *Id.*  Leffingwell instructed Austin police to escort Gjemre from the room.  *Id.*  Gjemre protested but complied.  *Id.*  According to Gjemre's allegations, Austin Police Department Special Officer Michael Bowen then informed Gjemre he was being issued a criminal trespass notice (CTN), banning Gjemre from the Austin City Council Chamber, Austin City Hall, and all surrounding premises for the period of one year, and he would be issued a criminal trespass citation if he were found violating the ban.  Compl. [#3] ¶ 30.

Roughly six weeks later in October 2011, Gjemre wrote to several City officials asking the CTN be lifted.  *See* Gjemre Depo., Ex. 5.  On November 4, 2011, City employee Eric Stockton responded to Gjemre and offered to schedule an appeal hearing on the CTN.  *See* Mot. Summ. J. &

Mot. Dismiss [#36] Ex. L (Stockton Aff.), Ex. 1. Gjemre responded on January 11, 2012, to request a hearing, and Stockton immediately scheduled one. *See id.*, Ex. 2. Although Gjemre did not appear at the January 20, 2012 hearing, it nonetheless resulted in the CTN and the "stay-away" period being rescinded as of January 25, 2012. *See id.*, Ex. 3. Gjemre was so notified on the same date. *See id.*, Ex. 4.

On August 22, 2013, Gjemre filed this lawsuit against Mayor Leffingwell; City Council Members Michael Martinez, Kathryne Tovo, Laura Morrison, Sheryl Cole, William Spelman, and Christopher Riley (City Council Members); City Manager Marc Ott and City Attorney Karen Kennard (City Officials); and the City of Austin. *See* Compl. [#3] ¶¶ 2–11. Gjemre asserts causes of action under: (1) 42 U.S.C. § 1983, which prohibits individuals, acting under color of law, from depriving others of their constitutional rights; (2) 42 U.S.C. § 1985, which prohibits conspiracies to interfere with civil rights; (3) 42 U.S.C. § 1986, which prohibits neglecting to prevent a conspiracy that interferes with civil rights; and (4) 42 U.S.C. § 12203, which prohibits retaliation and intimidation under the Americans with Disabilities Act (ADA). *See id.* ¶¶ 40–49. While unclear, the Court will presume Gjemre asserted all of the causes of action against each the defendants.

On November 26, 2014, Defendants filed their Motion for Summary Judgment and Motion to Dismiss under Rule 12(b)(6) [#36]. Specifically, Mayor Leffingwell, the City Council Members and the City Officials seek either judgment or dismissal (or both) of Gjemre's claims on a variety of grounds, including "no evidence" of Gjemre's claims, statute of limitations, and qualified immunity. *See id.* at 7. The City of Austin also seeks judgment or dismissal based on similar arguments. *See id.* But the City of Austin admits liability concerning Gjemre's § 1983 claim against the City based on the issuance of the CTN. *See id.* at 18–19. The admission is a byproduct of a

federal court decision in September 2012, ruling the City's CTN policy to be unconstitutional. *See* Findings of Fact and Conclusions of Law at 1, *Sanchez v. City of Austin*, No. A-11-CV-993-LY (W.D. Tex. Sept. 27, 2012), ECF No. 67.[1]  However, because there are no damages and Gjemre has not proved any damages, the City of Austin asks the Court award Gjemre no damages or, in the alternative, nominal damages of $1.

## Analysis

As an initial matter, the Court notes Gjemre has failed to respond to Defendants' Motion for Summary Judgment and Motion to Dismiss under Rule 12(b)(6) [#36], filed on November 26, 2014, and therefore the Court grants Defendants' motion as unopposed. *See* Local Rule CV-7(e)(2).  Nevertheless, the Court briefly addresses the merits of the motion.

## I.      Legal Standards

### A.      Rule 12(b)(6)

Federal Rule of Civil Procedure 8(a)(2) requires a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2).  A motion under Federal Rule of Civil Procedure 12(b)(6) asks a court to dismiss a complaint for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6).  In deciding a motion to dismiss under 12(b)(6), a court generally accepts as true all factual allegations contained within the complaint. *Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coordination Unit*, 507

---

[1] In addition to finding the City's CTN policy unconstitutional, the court also denied the plaintiffs' motion for attorneys' fees and expenses under 42 U.S.C. § 1988, even though the plaintiffs had prevailed on their constitutional challenge. *See* Order of Sept. 3, 2013, *Sanchez v. City of Austin*, No. A-11-CV-993-LY (W.D. Tex. Sept. 3, 2013), ECF No. 86.  Plaintiffs appealed this denial, and the Fifth Circuit ultimately reversed the district court's denial of fees and remanded the case to the district court to determine the amount of the award. *See Sanchez v. City of Austin*, No. 13-50916, 2014 WL 7234728 at *1 (5th Cir. Dec. 18, 2014).  As stated, the district court's constitutional ruling was not on appeal, and therefore the Fifth Circuit decision (issued subsequent to Defendants' Motion for Summary Judgment and Motion to Dismiss [#36]) has no implications for this order.

U.S. 163, 164 (1993).  However, a court is not bound to accept legal conclusions couched as factual allegations. *Papasan v. Allain*, 478 U.S. 265, 286 (1986).  Although all reasonable inferences will be resolved in favor of the plaintiff, the plaintiff must plead "specific facts, not mere conclusory allegations." *Tuchman v. DSC Commc'ns Corp.*, 14 F.3d 1061, 1067 (5th Cir. 1994).  The plaintiff must plead sufficient facts to state a claim for relief that is facially plausible. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.  Although a plaintiff's factual allegations need not establish the defendant is probably liable, they must establish more than a "sheer possibility" that a defendant has acted unlawfully. *Id.*  Determining plausibility is a "context-specific task," that must be performed in light of a court's "judicial experience and common sense." *Id.* at 679.  In deciding a motion to dismiss, courts may consider the complaint, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, such as documents incorporated into the complaint by reference, and matters of which a court may take judicial notice. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

B.    **Summary Judgment**

Summary judgment shall be rendered when the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–25 (1986); *Washburn v. Harvey*, 504 F.3d 505, 508 (5th Cir. 2007). A dispute regarding a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248

-6-

(1986). When ruling on a motion for summary judgment, the court is required to view all inferences drawn from the factual record in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986); *Washburn*, 504 F.3d at 508. Further, a court "may not make credibility determinations or weigh the evidence" in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *Anderson*, 477 U.S. at 254–55.

Once the moving party has made an initial showing that there is no evidence to support the nonmoving party's case, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine fact issue. *Matsushita*, 475 U.S. at 586. Mere conclusory allegations are not competent summary judgment evidence, and thus are insufficient to defeat a motion for summary judgment. *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007). Unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence. *Id.* The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his claim. *Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 164 (5th Cir. 2006). Rule 56 does not impose a duty on the court to "sift through the record in search of evidence" to support the nonmovant's opposition to the motion for summary judgment. *Id.* "Only disputes over facts that might affect the outcome of the suit under the governing laws will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248. Disputed fact issues that are "irrelevant and unnecessary" will not be considered by a court in ruling on a summary judgment motion. *Id.* If the nonmoving party fails to make a showing sufficient to establish the existence of an element

essential to its case and on which it will bear the burden of proof at trial, summary judgment must be granted. *Celotex*, 477 U.S. at 322–23.

## II.   Application

First, it is unclear whether any of Gjemre's causes of action actually concern the events of August 18, 2011. Nevertheless, the claims fail for two reasons. First, they are barred by the relevant statute of limitations. Section 1986 provides an action must be "commenced within one year after the cause of action has accrued." 42 U.S.C. § 1986. Because there is no federal statute of limitations for § 1983, § 1985 claims, or the ADA, the Court applies the personal injury claims limitations period applicable in the forum state. *See Frame v. City of Arlington*, 616 F.3d 476, 488–89 (5th Cir. 2010) (ADA); *Helton v. Clements*, 832 F.2d 332, 334 (5th Cir. 1987) (§§ 1983, 1985). In Texas, the limitations period for personal injury claims is two years. TEX. CIV. PRAC. & REM. CODE § 16.003. Gjemre filed his Complaint on August 22, 2013, more than two years after August 18, 2011. Therefore, any claims related to the events of August 18, 2011 are time-barred.

Second, Gjemre was unable to identify at his deposition any deprivation of rights or resulting harm stemming from the events of August 18, 2011. Gjemre Depo. at 34:21–37:22. Since Gjemre has failed to respond to the instant motion, he has also failed to provide any evidence to support any claims regarding August 18, 2011. Therefore, if these claims were not time-barred, Defendants would be entitled to judgment. The Court now turns its attention to the supposed claims arising out of August 25, 2011.

## A.   City Council Members and City Officials

As for any claims against the City Council Members and City Officials, they have no merit. Any claim under § 1986 is barred by the one-year statute of limitations. Any claim under §§ 1983,

1985, or 12203 is not supported by the record.  Gjemre has provided the Court with no evidence of any actions taken by the City Council Members or the City Officials in violation of his rights.  In his deposition, Gjemre admits he has no evidence of such actions, but rather contends their failure to correct the Mayor forms the basis of his claims against the City Council Members and the City Officials.  *See* Gjemre Depo. at 73:11–18, 77:5–78:4, 79:21–82:18.  Affidavits provided by each of the City Council Members and City Officials confirm none of these individuals were involved in either the removal of Gjemre from the August 25 meeting or the subsequent issuance of the CTN.  *See* Mot. Summ. J. & Mot. Dismiss [#36] Exs. C–J (Affs. of City Council Members & City Officials).

In addition, Mayor Leffingwell states in his affidavit it is the Mayor of Austin, as the presiding officer at City Council meetings, who conducts the meeting, calls the speakers, and maintains decorum.  *See id.*, Ex. B (Leffingwell Aff.).  None of the City Council Members or City Officials took any of the relevant actions, and none had any of the relevant responsibility for conducting the Council meeting.  *See* Affs. of City Council Members & City Officials.  Similarly, none of these Defendants took any relevant action concerning the CTN.  *Id.*

In sum, Gjemre provides no evidence to support his claims against the City Council Members or the City Officials, and the undisputed record contradicts his claims.  Therefore, Defendants are entitled to judgment on all claims against them which are not time-barred.

**B.   Mayor Leffingwell**

As for any claim against Mayor Leffingwell under § 1986, it is time-barred.  As for any claim relating to the issuance of the CTN, the record is clear Mayor Leffingwell had nothing to do with this event.  In his deposition, Gjemre identified no conduct by Major Leffingwell connecting him to the

CTN, and Mayor Leffingwell's affidavit denies any such conduct.  *See* Gjemre Depo. at 82:4–18; Leffingwell Aff.  As for any §§ 1985 or 12203 claim, there is simply no evidence to support any conspiracy to interfere with Gjemre's civil rights or any retaliation or intimidation under the ADA.

The only potential remaining claim against Mayor Leffingwell is a § 1983 claim concerning his decision to end Gjemre's speaking time and order him removed from the City Council meeting. In response to such a claim, Mayor Leffingwell argues he is entitled to qualified immunity, and the Court agrees.  "Qualified immunity protects public officials from suit unless their conduct violates a clearly established constitutional right." *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008) (internal quotation marks omitted).  A plaintiff bears the burden of negating a properly raised qualified immunity defense. *Id.*  The qualified immunity analysis itself involves two considerations: (1) whether the public official's conduct violated an actual constitutional right, and (2) whether the right was clearly established at the time of the challenged conduct. *Cutler v. Stephen F. Austin State Univ.*, 767 F.3d 462, 469 (5th Cir. 2014).  The second prong is better understood as two separate inquiries: whether the allegedly violated constitutional rights were clearly established at the time of the incident; and if so, whether the public official's actions were "objectively unreasonable in light of clearly established law at the time of the conduct in question." *Hare v. City of Corinth, Miss.*, 135 F.3d 320, 325 (5th Cir. 1998).  To be clearly established, the law must clearly prohibit an official's conduct such that "every reasonable official would have understood that what he is doing violates that right." *Cutler*, 767 F.3d at 470 (citing *Ashcroft v. Al-Kidd*, 131 S. Ct. 2074, 2083 (2011)).  The standard "gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law." *Hare*, 135 F.3d at 325.

Considering Gjemre bears the burden of negating Mayor Leffingwell's properly raised qualified immunity defense, his failure to respond amounts to a failure to meet his burden. Consequently, Mayor Leffingwell is entitled to qualified immunity for this reason alone.

Nevertheless, the Court briefly engages the qualified immunity analysis and concludes Mayor Leffingwell is entitled to qualified immunity on the current record. Instead of addressing the first prong of whether Mayor Leffingwell violated Gjemre's First Amendment rights, the Court skips to the second prong. *See Pearson v. Callahan*, 555 U.S. 223, 236 (2009) (concluding district courts "should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand"). While Gjemre has a legally protected right to address the City Council, that right is subject to the City's interest in conducting orderly meetings via its rules of procedure and decorum. *See City of Madison, Joint Sch. Dist. No. 8 v. Wisc. Emp't Relations Comm'n*, 429 U.S. 167, 176 n.8 (1976) ("Plainly, public bodies may confine their meetings to specified subject matter."); *Rowe v. City of Cocoa, Fla.*, 358 F.3d 800, 803 (11th Cir. 2004) ("There is a significant government interest in conducting orderly, efficient meetings of public bodies."); *Eichenlaub v. Twp. of Ind.*, 385 F.3d 274, 281–82 (3d Cir. 2004) (affirming summary judgment for mayor and city on § 1983 claims based on plaintiff's removal for "badgering, constant interruptions, and disregard for the rules of decorum"); *Kindt v. Santa Monica Rent Control Bd.*, 67 F.3d 266, 271–72 (9th Cir. 1995) (affirming summary judgment for rent control board on § 1983 claims based on plaintiff's ejection from meeting because board's regulations restricting public commentary to three minutes were reasonable content-neutral time, place, and manner restrictions that were not intended to suppress a particular viewpoint); *Wentholdt v. City of Farmers Branch, Tex.*, No. 3:11-CV-0748-B, 2012 WL 467325, at

*9 (N.D. Tex. Feb. 14, 2012), *aff'd*, 532 F. App'x 474 (5th Cir. 2013) (unpublished) (holding mayor and city council "were allowed to limit speakers to two minutes, require speakers to speak only on agenda items, and call for a recess to calm a disruptive crowd, regardless of whether the Council meeting was a designated or limited public forum"); *Finger v. Garza*, No. SA-02-CA-0956-RF, 2003 WL 22768236, at *2 (W.D. Tex. Oct. 7, 2003), *aff'd*, 98 F. App'x 326 (5th Cir. 2004) (unpublished) (noting cities' "legitimate interest in conducting efficient, orderly meetings" and granting summary judgment in favor of the city).

Given this state of the law, it cannot be said Mayor Leffingwell's actions were objectively unreasonable or that every reasonable official would have understood that what he did violated Gjemre's rights. The City has rules of order for City Council meetings, and they allow the presiding officer to "shorten a person's speaking time or ban a person from speaking for the duration of a meeting only for a violation of decorum." Mot. Summ. J. & Mot. Dismiss [#36] Ex. Q (Austin City Code § 2-5-23). Mayor Leffingwell did not cut short Gjemre's time and have him removed based on the content of Gjemre's speech. Instead, he removed him because Gjemre, despite multiple warnings, engaged in behavior Mayor Leffingwell considered outside the rules of decorum and unrelated to the discussion of the particular agenda item at issue. *See* Leffingwell Aff. The behavior included exhaling and inhaling as if to simulate smoking marijuana, making raspberry noises, making gestures and faces, and suggesting Mayor Leffingwell be referred to as "Mayor Poo Poo Head." Mayor Leffingwell's ejection of Gjemre applied only to that August 25, 2011 meeting, and as already discussed, Mayor Leffingwell was not involved in the CTN banning Gjemre from City Hall for a year.

-12-

In sum, the record does not indicate Mayor Leffingwell acted unreasonably in light of clearly established law when he abbreviated Gjemre's time at the podium and removed him from the meeting. Therefore, Mayor Leffingwell is entitled to qualified immunity with respect to Gjemre's § 1983 claim.

## C.    City of Austin

For the same reasons described above, Gjemre's claims against the City of Austin are either time-barred or lacking support in the record with the exception of one claim: a § 1983 claim based on the City's issuance of the CTN in compliance with its policy. As referenced above, the City's CTN policy was previously ruled unconstitutional by the court in *Sanchez*. Consequently, the City admits it violated Gjemre's constitutional rights when one of its employees issued him a CTN. Acknowledging the constitutional violation, there is still no evidence to support any damages incurred by Gjemre. To the extent Gjemre seeks injunctive relief, the City stopped enforcing the CTN policy even before the *Sanchez* decision and implemented a new policy on February 3, 2012. *See* Stockton Aff. To the extent Gjemre seeks monetary relief, he has presented no such evidence, and the Court fails to see how Gjemre incurred anything beyond nominal damages for the temporary restriction on his right to speak at City Council Meetings. *See Memphis Cnty. Sch. Dist. v. Stanchura*, 477 U.S. 299, 308 (noting no compensatory damages should be awarded for violation of constitutional rights absent proof of actual injury although nominal damages may be appropriate). Even in *Sanchez* itself, the court, while ruling the CTN policy unconstitutional, granted no relief beyond an injunction and costs. *See* Final Judgment, *Sanchez v. City of Austin*, No. A-11-CV-993-LY (W.D. Tex. Sept. 27, 2012), ECF No. 68. Therefore, in light of the nature of the injury and

especially considering Gjemre has not even responded to Defendants' motion, the Court awards no damages.

### Conclusion

The Court GRANTS Defendants' Motion for Summary Judgment and Motion to Dismiss under Rule 12(b)(6) [#36] as unopposed and on its merits.  Specifically, all of Gjemre's claims concerning the events of August 18, 2011, and any claim pursuant to § 1986 are barred by the relevant statute of limitations.  As for the remaining claims, Defendants are entitled to judgment given the undisputed record presented to the Court with two exceptions: (1) Gjemre's § 1983 claim against Mayor Leffingwell for ending his speaking time and removing him from the August 25, 2011 meeting and (2) Gjemre's § 1983 claim against the City of Austin for issuing him a CTN. Concerning the former, Mayor Leffingwell is entitled to qualified immunity.  As for the latter, the City admits liability, but there is no evidence to support an award of damages.

Accordingly,

IT IS ORDERED that Defendants' Motion for Summary Judgment and Motion to Dismiss under Rule 12(b)(6) [#36] is GRANTED.

SIGNED this the 30th day of January 2015.

_Sam Sparks_

SAM SPARKS
UNITED STATES DISTRICT JUDGE